UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

| | |
|---|---|
| 80 WEST WASHINGTON PLACE REAL ESTATE HOLDINGS, LLC, | CASE NO: 23-11347-JPM<br>CHAPTER 11 |
| Debtor. | |

------------------------------------------------------------------X

**APPLICATION OF EMIGRANT BANK
IN SUPPORT OF AN ORDER
MODIFYING AND TERMINATING THE AUTOMATIC STAY**

TO:  THE HONORABLE JOHN P. MASTANDO III
     UNITED STATES BANKRUPTCY JUDGE

The Application of Emigrant Bank ("Emigrant") or "Applicant") by its attorneys, Terenzi & Confusione, P.C., respectfully represents and says:

**I.   RELIEF REQUESTED**

1.   This is a contested matter brought pursuant to Federal Rules of Bankruptcy Procedure Rules 4001, 9013 and 9014 and Sections 362(d) and 554(b) of Title 11 of the United States Code (the "Bankruptcy Code") for an Order: (i) modifying and terminating the automatic stay to permit Applicant to exercise all of its rights and remedies with respect to certain collateral consisting of the real property known as 80 West Washington Place, New York, New York (the "Property"), owned by 80 West Washington Place Real Estate Holdings LLC (the "Debtor") and (ii) granting Applicant such other and further relief as the Court deems just and proper.

**II.   BACKGROUND**

2.   Applicant is the holder, by assignment, of a Note, Mortgage and

Assignment of Leases and Rents and Security Agreement dated October 9, 2013 ("Loan 1"), given by the Debtor in the original principal amount of $6,000,000.00 covering the Property.

3.  Applicant is the holder, by assignment, of a Note and Mortgage dated March 13, 2015 ("Loan 2"), given by the Debtor in the original principal amount of $1,085,618.70 covering the Property.

4.  Applicant is holder, by assignment, of a Consolidated, Modified and Extended Promissory Note and Mortgage Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement dated March 13, 2015 ("CEMA 1"), given by the Debtor, whereby Loan 1 and Loan 2 were consolidated to form a single lien in the sum of $7,000,000.00.

5.  Applicant is holder, by assignment, of an Extension and Modification Agreement dated the July 1, 2016 ("Extension 1"), given by the Debtor and, Marie D. Rainero individually and as trustee of the Marie D. Rainero Melley Trust, and William Rainero (the "Guarantors").

6.  Applicant is holder, by assignment, of an Extension and Modification Agreement dated April 1, 2017 ("Extension 2"), given by the Debtor and Guarantors.

7.  Applicant is holder, by assignment of a Note, Mortgage and Security Agreement dated May 16, 2016 ("Loan 3"), given by 345 Carne LLC to the Galinn Fund LLC in the sum of $1,000,000 secured by 345 West 14th Street, Unit PHB, New York, New York ( "345 West").

8.  Applicant is holder, by assignment of a Note, Mortgage and Security Agreement dated November 22, 2016 ("Loan 4"), given by 345 Carne LLC to the Galinn Fund LLC in the sum of $3,000,000 secured by 345 West.

9. Applicant is holder, by assignment, of a Consolidated Promissory Note and Consolidation, Extension and Modification Agreement dated November 22, 2016("CEMA 2"), given by 345 Carne LLC and the Debtor to the Galinn Fund LLC, wherein and whereby the Debtor assumed all obligations and agreements of Loan 3 and Loan 4 and forming a single lien in the sum of $4,000,000.

10. On November 22, 2016, a Mortgage Spreader Agreement was executed by the Galinn Fund LLC, 345 Carne LLC and the Borrower whereby Loan 3 was spread to cover the Property.

11. Applicant is the holder, by assignment, of a Note and Mortgage dated November 13, 2017 ("Loan 5"), given by the Debtor in the original principal amount of $1,969,514.38 covering the Property.

12. On November 8, 2017, a Release of Part of Mortgagee Property was executed by 345 Carne LLC and the Galinn Fund LLC whereby 345 West was released from Loan 3 and Loan 4.

13. Applicant is holder, by assignment, of a Consolidated Mortgage Loan Note and Mortgage Consolidation, Modification and Extension Agreement dated the November 13, 2017 ("CEMA 3"), given by the Debtor whereby consolidated Loan 1, CEMA 1, Loan 2, CEMA 2, Loan 3, Loan 4 and Loan 5 forming a single lien in the sum of $12,000,000.00.

14. Applicant is holder, by assignment, of a Gap Adjustable Rate Note and Gap Mortgage dated March 21, 2019 ("Loan 6"), given by the Debtor in the original principal amount of $1,000,000.00 covering the Property.

15. Applicant is holder, by assignment, of a Consolidated Note and Consolidation, Extension and Modification Agreement dated March 21, 2019 ("CEMA 4"), given

by the Debtor whereby consolidating Loan 1, Loan 2, CEMA 1, Loan 3, Loan 4, CEMA 2, Loan 5 and Loan 6, to form a single lien of $13,000,000.00 covering the Property. A copy of CEMA 4, which references all other loan documents referenced herein, is attached hereto as Exhibit "A".

16. Pursuant to the terms of the Note, monthly payments were to be made to the Applicant. The Debtor defaulted on the April 1, 2020 payment due under the Note and on each payment due thereafter. As a result of the Debtor's default, Applicant commenced a foreclosure action in the Supreme Court of the State of New York, New York County, under Index No. 850070/2021 (the "State Foreclosure Action").

17. On December 28, 2020, the Debtor submitted a request for forbearance to Applicant with a detailed marketing plan from Brooker Leslie J Garfield. Marketing plan is attached hereto at Exhibit "B". The forbearance was denied.

18. Thereafter, Debtor sought reconsideration of the forbearance denial. Applicant responded with a detailed denial dated February 10, 2021, which reiterates the Debtor's unsuccessful attempts to market the Property for sale over the proceeding 18 months. *See* February 2021 letter attached hereto as Exhibit "C".

19. At the request of Debtor, Applicant entered into a Stipulation dated May 11, 2022. A copy of which is attached hereto as Exhibit "D", pursuant to which Debtor withdrew its objection to the foreclosure in exchange for a forbearance through September 11, 2022, to allow Defendants an opportunity to market the Property in order to resolve the underlying debt.

20. Despite given sufficient time, the Debtor failed to successfully market the Property in order to satisfy the underlying debt.

21. Consequently, a Judgment of Foreclosure and Sale was entered on March 15, 2023, a copy of which is annexed hereto as Exhibit "E. A foreclosure sale with respect to the

Property was scheduled for August 23, 2023 (the "State Foreclosure Sale").

22.    On August 22, 2023, the Debtor filed the within petition with the Clerk of the Court under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Filing"), thereby staying the State Foreclosure Sale.

23.    On August 30, 2023, the Debtor filed an amended bankruptcy petition (the "Amended Petition") to designate the Debtor as a single asset real estate ("SARE") as defined in 11 U.S.C. §105(51B).

### III.   THE APPLICATION

**Relief from Stay for Cause**

24.    By this Application, Applicant seeks the entry of an Order modifying and terminating the automatic stay to permit Applicant to exercise all of its rights and remedies with respect to the Property.

25.    Bankruptcy Code Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stayC
>     (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . ..

26.    Section 362(d) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay "for cause". Bankruptcy courts have broad discretion in deciding whether to grant relief from the automatic stay, Congress recognized that, in some instances, it may be appropriate to grant relief from the stay in order to allow a creditor to proceed with state court litigation against the debtor. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-344 (1977).

The decision of whether to modify the automatic stay in such a case is committed to the discretion of the bankruptcy judge. *See* In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990).

27. In Sonnax, the Second Circuit set forth 12 factors to be considered in deciding whether the stay should be lifted to allow litigation to continue in another forum:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

Id. at 1286, *citing* In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984). The court need not consider all of these factors in making its determination; it may consider whichever ones it deems appropriate, without necessarily giving equal weight to each factor it considers. Id; *see also* In re Montague Pipeline Technologies Corp., 209 B.R. 295 (Bankr. E.D.N.Y. 1997). Another factor the court may look to is whether the stay is being used to shield misconduct by the debtor. Id. at 770.

28. Applying the Sonnax factors to the case at bar, it is clear that the stay must be vacated. First, relief from the stay would certainly result in a complete resolution of the issues since Emigrant can proceed with a foreclosure sale of the Property in accordance with the

Judgement of Foreclosure and Sale which was previously scheduled the day before the Petition Date. Moreover, given that the Judgment of Foreclosure is a final judgment, there are no issues remaining unresolved to be litigated and any judgment claim arising from the litigation would not be subject to equitable subordination in the bankruptcy and would not result in a judicial lien avoidable by the Debtor.

29. There is no equity in the Property, Applicant's lien on the Property has grown in excess of $19,323,453.41 and there is a second mortgage lien held by the Galinn Fund LLC in the approximate amount of $4,000,000.00. The value of the Property is estimated to be $21,500,000.00 as indicated by an appraisal dated July 26, 2023, a copy of which is annexed hereto as Exhibit "F". The appraisal also attaches a report showing that there are significant real estate taxes in arrears and continuing to accrue at over $30,000 per year. Given the accumulated secured debt in excess of $23,000,000, together with outstanding real estate taxes approaching $30,000 and the costs of sale including marketing, brokerage costs and other closing expenses, it is clear that there is no equity in the Property to be retained by the Debtor, the only possible motive for the commencement and continuation of this proceeding is to hinder and delay the pursuit of Applicant's legal rights.

30. Moreover, given that Emigrant is currently ready for a foreclosure sale of the Property, the interests of judicial economy and the expeditious and economical resolution of litigation would best be served by granting relief from the automatic stay to move forward with the foreclosure sale.

31. Thus, based on the factors set forth in <u>Sonnax</u>, the Court must grant the relief requested by Emigrant.

32. In addition, it is respectfully submitted that the facts of the within

proceeding dictate that the stay must be vacated under Section 362(d)(2) of the Bankruptcy Code since the Debtor maintains no equity in the Property.

33. The Debtor's stated intent is to sell the property through a plan of reorganization. As an initial matter, the Debtor has been attempting to sell this Property for over three years as detailed above and most recently listed with Ryan Serhant, one of the leading brokers in New York. The Debtor's attempts have been unsuccessful and there is no reason to believe that filing for bankruptcy will enhance the Property's marketing position.

34. There appears to be no possibility of any value being retained by the Debtor from the Property, which is the sole asset of the Debtor. Between Emigrant's lien and The Galinn Fund LLC, not even considering the outstanding and accruing real estate taxes, the Debtor has no equity. Accordingly, there are no funds available to make payments to unsecured claim holders. Thus, there is no possibility for the Debtor to formulate a plan of reorganization which is confirmable.

35. Furthermore, Applicant is not adequately protected since they are undersecured, with interest accruing at $1,739,070 per annum, real estate taxes in arrears and accruing and are receiving no payments and there is insufficient income to generate adequate protection payments.

36. The Debtor has indicated that it intends to retain a broker and sell the Property forthwith. However, the Property has in fact been listed with a high-profile broker for over 700 days and no movement has been made toward a sale of the Property. In addition, to date the Debtor has failed to seek to retain a broker in the bankruptcy proceeding which certainly indicates that the Debtor has no intent to rapidly move this process along. Given that it is unlikely that the Debtor can propose a plan based on a sale of the Property, relief from the stay is warranted.

**Relief from Stay Based on SARE Designation**

37. Furthermore, given that the Debtor is a SARE, as designated by the Debtor in its Amended Petition, the Court should grant Emigrant relief from the stay by November 20, 2023 pursuant to Section 362(d)(3). Section 362(d)(3) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay against a SARE, by an entity whose claim is secured by an interest in such real property, on the later of 90 days after the order for relief or 30 days after the court determines the debtor is subject to this paragraph, unless (A) the debtor has filed a plan of reorganization that has a reasonable likelihood of being confirmed within a reasonable time, or (B) the debtor has commenced monthly payments in an amount equal to the then applicable nondefault contract rate of interest.

38. The Debtor filed the instant petition on August 22, 2023. 90 days later is November 20, 2023. Based on the arguments set forth above, it is highly unlikely that the Debtor will either file a plan that has a reasonable likelihood of being confirmed within a reasonable time by the November 20, 2023 deadline or have sufficient income to commence monthly payments to Applicant within the next 30 days. Given that the return date of this motion is October 4, 2023, if the Court declines to grant relief from the stay for cause as set forth above, Emigrant requests that if the Debtor has failed to comply with the requirements of Section 362(d)(3) by the hearing date, that this Court grant Emigrant relief from the automatic stay at that time on a conditional basis as of November 20, 2023.

39. Since no novel or complex issues of law are raised by the instant Motion other than as set forth above, Emigrant requests that any requirement for a separate memorandum of law be waived.

40. Due to Applicant's ongoing economic harm, Applicant respectfully requests

9

that the fourteen-day stay of the instant order pursuant to Federal Rule of Bankruptcy Procedure 4001(a) (3) be waived.

41. No prior application for the relief requested herein has been made to this or any other court.

## IV. CONCLUSION

42. Relief from the stay is warranted under Section 362(d). Accordingly, the automatic stay must be modified to permit Applicant to assert its rights in the Property, including, but not limited to, the consummation of a foreclosure sale.

**WHEREFORE,** it is respectfully requested that the Court enter an Order: (i) modifying and terminating the automatic stay to permit Applicant to exercise all of its rights and remedies with respect to the Property; and (ii) granting Applicant such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
September 7, 2023

**TERENZI & CONFUSIONE, P.C.**
Attorneys for Emigrant Funding Corporation

By: \s\ Cara M. Goldstein
Cara M. Goldstein, Esq. (CMG 3517)
401 Franklin Avenue, Suite 304
Garden City, New York 11530
(516) 812-0800
cgoldstein@tcpclaw.com